## THE NOW THEN.

### HERRESHOFF MANUF'G CO. v. THE NOW THEN.

(*District Court, D. Delaware.* June 2, 1892.)

No. 427.

1. **MARITIME LIENS—SUPPLIES—FOREIGN PORT—ORDER OF OWNER.**
   When supplies are furnished to a vessel in a foreign port by order of her master a lien is implied, but for work done by order of the owner no lien will be held to exist unless proved by the agreement of the parties.

2. **SAME—OWNER'S CREDIT.**
   On the evidence in this case, *held*, that the supplies furnished by libelant at Bristol, R. I., to the yacht Now Then, whose home port was Wilmington, Del., by order of the owner of the yacht, were furnished on the personal credit of such owner, and not on the credit of the yacht, and no lien was created thereby.

In Admiralty. Libel to enforce lien for supplies. Libel dismissed.

*Henry Whitney Bates*, for libelant.

*Willard Saulsbury*, for respondent.

WALES, District Judge. This is a proceeding *in rem* to enforce the payment of an alleged lien against the steam yacht Now Then for repairs and materials made and furnished to the vessel by the libelants at its works in Bristol, R. I., the home port of the yacht being Wilmington, Del. The owner of the yacht and the respondent in this case is Mrs. Rosalie B. Addicks, who resides at Claymont, in this district.

Although much other matter has been introduced, the decisive question in the case as presented on the pleadings and evidence is whether the repairs to the yacht were made on the credit of the vessel or on the personal credit of the owner's husband, Mr. J. E. Addicks. About the 26th of June, 1889, Mr. Addicks bought the yacht from the libelant for the cash price of $15,000, and by his direction the bill of sale was made to his wife, and the yacht was delivered to her at Nahant, Mass. After the delivery, and early in the following month of July, the boiler of the yacht gave out, and the vessel was sent by Mr. Addicks to the libelant, at Bristol, with orders from him to have the necessary repairs made. When a bill for the repairs was sent to Mr. Addicks he refused to pay it, on the ground that Mr. John B. Herreshoff, the president of the libelant company, had warranted the boiler for one year, and that it was the duty of the company to keep it in good order for that period without additional charge. After this the libelant continued to do additional work on the yacht by the orders of Mr. Addicks, who punctually paid for it, with the exception of a small balance, which is included in the present claim; but he has uniformly refused to pay for the boiler repairs. Much testimony was taken in relation to the nature of the warranty, which was claimed on one side and positively denied on the other; and also as to the condition of the yacht's boiler at the time of the sale, but, as already remarked, the controlling question here is whether the libelant has established its right to a lien. So far as concerns the present

case, the law which gives a lien to the shipbuilder or material man may be stated in the language of the supreme court, in *The Lulu*, 10 Wall. 197:

"If necessary repairs and materials are made and furnished to a vessel in a port other than her home port, the *prima facie* presumption is that they were made and furnished on the credit of the vessel, unless the contrary appears from the evidence in the case."

This is stating the rule most favorably for the libelant, since it has been held by admiralty judges whose opinions are entitled to the highest respect that credit is presumed to be given to the vessel only when the repairs are made in a foreign port on the orders of the master; but that, when the repairs are made on the orders of the owner, the presumption of credit to the vessel does not arise, and in that case a lien will not exist except by the express contract of the parties. In *The Mary Morgan*, 28 Fed. Rep. 196, it was decided that, the repairs having been made and supplies furnished under a contract with the owner, the presumption was that the credit was given to him personally; and, in the absence of the proof of an express lien, none will be given. In *The Francis*, 21 Fed. Rep. 715, it was held that a known owner obtaining supplies on his personal order in a foreign port, not being master, deals presumptively on his personal credit only, and no lien will be implied unless the libelant satisfies the court, from the negotiations or circumstances, that there was a common understanding or intention to bind the ship. The reasons assigned for the distinction, between the cases where the work is done on the order of the master and when it is done on the order of the owner, is that the master is supposed to be without funds or personal credit, and the repairs, if made at all, must be presumed to be made on the credit of the ship, unless there be evidence to the contrary; but where the work is done on the order of the owner, who is supposed to have credit, the presumption is reversed, and a lien will not be recognized except it has been made under an express contract. In other words, when the work is done by the order of the master a lien is implied, but for work done by order of the owner no lien will exist unless proved by the agreement of the parties. It is not necessary, however, to enter upon a discussion of these rules, because upon the application of either one of them to the facts of this case I am satisfied that the libelant is not entitled to a lien against the Now Then. Mr. Addicks had paid for the yacht, and given it to his wife, and when it needed repairs he sent it to the libelant with his personal orders to have them made, and specifying what should be done. He was reputed to be a rich man, able to pay his debts, and there was no thought on the part of the libelant that it would require a lien on the vessel to secure payment for its work. Mr. J. B. Herreshoff testifies that he knew nothing about the question of credit,—whether it was given to Mr. Addicks, personally, or to the yacht. Mr. Young, the secretary of the libelant company, when questioned on the subject, speaks very vaguely, as appears from the following portions of his testimony:

"*Question.* Tell me whether the repairs were made upon the credit of the vessel or upon the credit of Mr. Addicks. *Answer.* They were made upon the credit of Mr. Addicks. *Q.* And not on the credit of the vessel? *A.* The bill was rendered to Mr. Addicks. *Q.* To whom do you look for the payment of the bill,—Mr. Addicks or the vessel? *A.* We look to the vessel for the payment of the bill, through Mr. Addicks, as agent for the vessel."

On cross-examination this witness says:

"*Question.* These repairs and charges were made against Mr. Addicks, as I understand, were they not? *Answer.* They were. *Q.* And it was on his order and directions you made the repairs? *A.* Yes, sir. *Q.* And you looked to him, I understand you, for the payment of these bills which were contracted for as you have stated? Is that correct? *A.* We looked to the vessel through him as an agent of the vessel. We cannot do otherwise."

The inference to be drawn from such testimony, supplemented as it is by evidence of the dealings and transactions between the libelant and Mr. Addicks, removes the presumption of a lien, and convinces me that the libelant had no idea or intention of looking to any other quarter for payment for the repairs on the Now Then than to Mr. Addicks; that it never relied on the yacht as security for payment, but depended solely on the personal responsibility of Mr. Addicks as the husband and agent of the owner; that it is now too late for it to attempt to set up a lien, and it must therefore seek to recover its claim by a libel *in personam*, or by an action at law. A decree will be entered dismissing the libel, with costs.